## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| FLORENCE STEWART, | : | CIVIL ACTION NO. 2:20-cv-6561 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE |
| v. | : | |
| | : | MAGISTRATE JUDGE |
| IDEAL IMAGE OF OHIO, LLC, | : | |
| One N. Dale Mabry Hwy., Ste. 1200 | : | |
| Tampa, FL 33609 | : | |
| c/o Corporate Creations Network, Inc., | : | |
| 119 E. Court St. | : | |
| Cincinnati, OH 45202, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

**I.       Preliminary Statement**

1.      This diversity action seeks economic, compensatory, and punitive damages; declaratory, injunctive, and equitable relief; prejudgment and post-judgment interest; costs; and attorneys' fees for the sex discrimination in violation of the Ohio Laws Against Discrimination committed by Defendant when it (a) inflicted a hostile environment on Plaintiff and failed to provide a prompt and effective remedy for her manager's harassment; and/or (b) constructively discharged Plaintiff by allowing its manager to persist in harassment which rendered the conditions of her employment intolerable.

**II.      Jurisdiction and Venue**

2. This action brings a sex discrimination claim under Ohio R.C. 4112.99 and the common law of the State of Ohio and invokes the diversity of citizenship jurisdiction of this Court under 28 U.S.C. §1332.

3. Diversity jurisdiction is appropriate as the amount in controversy, consisting of back and front pay; prejudgment and postjudgment interest; compensatory damages for emotional distress, humiliation, frustration, and related suffering; punitive damages; attorneys' fees, and costs, far exceeds $75,000.

4. Declaratory, injunctive, and equitable relief are sought pursuant to 28 U.S.C. §§ 2201; 2202; and Fed.R.Civ.P. 65.

5. Economic, compensatory, and punitive damages are sought pursuant to Ohio R.C. 4112.99 and the common law of the State of Ohio

6. Costs may be awarded pursuant to Fed.R.Civ.P. 54, Ohio R.C. 4112.99, and the common law of the State of Ohio, while attorneys' fees may be awarded under the common law of the State of Ohio governing the shifting of fees when punitive damages are awarded.

7. Venue lies in this forum pursuant to 29 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because Defendant's headquarters and place of business where Plaintiff was employed and subjected to a hostile environment and constructive discharge are located in Franklin and Delaware counties.

### III. Parties

8. Plaintiff Florence Stewart, a resident since March 2020 of the city of Los Angeles in the State of California, is a Certified Nurse Practitioner in Ohio, and an Advanced Practice Registered Nurse in California and Florida. She began working for Defendant in July 2015 as a treatment provider; at all times material to this action competently performed her job duties; and

last worked for Defendant on February 26, 2018, when she was left no viable choice but to resign in order to avoid continuing infliction by her manager of a hostile environment.

9. Defendant Ideal Image of Ohio, LLC is an entity formed in Delaware, registered in the State of Ohio as a foreign limited liability company, and controlled as the wholly-owned subsidiary of Ideal Image Development Corp., a Florida corporation, which operates the leading MedSpa in North America with more than 150 corporate-owned or franchise outlets in the United States and Canada; has, at all times material to this action employed four or more employees in the State of Ohio; and provides non-invasive procedures to patients seeking to improve their skin, face, and/or body appearance, such as laser hair removal, injection of Botox and fillers, sculpting through fat reduction, and skin lifting.

**IV.    Facts**

10. In August 2017, Defendant hired Elijah Keating as an Area Manager with responsibility to plan and direct the day-to-day operations of its outlets; coach and counsel employee performance; direct subordinates in their daily performance; coordinate human resources; and exhibit professionalism and behaviors reflective of a leader.

11. As a practical matter, Manager Keating had the power to assign, evaluate, promote, discipline, and/or terminate a subordinate.

12. During the period from September 2017 through February 2018, Defendant assigned Plaintiff to be directed by Manager Keating.

13. Manager Keating made repeated unwelcome and highly offensive sexual advances to Plaintiff.

14. Plaintiff had been placed at a provider station in a location hidden from the view of office cameras.

15. Near that location office supplies were stored.

16. On multiple occasions, Manager Keating would visit Plaintiff's location to secure office supplies and, rather than wait for her to move, reach around her and intentionally caress her body, including her breasts.

17. Plaintiff made absolutely clear to Manager Keating that she objected to being touched that way and did not believe the repeated touching was merely accidental.

18. Despite her protests, Manager Keating persisted in copping a feel whenever he could.

19. Often Manager Keating would also approach Plaintiff when she was bending over or reaching for supplies and then, even though ample room existed to go around her, intentionally brush his body against her as he went by.

20. It was obvious to Plaintiff that Manager Keating derived enjoyment from the touching and brushing, was invigorated rather than discouraged by her protests, and sexually objectified the workplace.

21. It was common knowledge in the workplace that Manager Keating was rumored to be having sexual relations with an employee behind closed doors there and had once forced a female employee to spend lengthy time alone with him in the storage room.

22. Due to the nature of Defendant's services, the workplace environment was sexualized in the sense that women came there to increase their attractiveness by modifying their appearance to the way models or celebrities looked.

23. Manager Keating routinely touched female employees without their permission, including manhandling one female employee by forcefully grabbing her arm and spinning her around because she had not been "listening" to him.

24. Plaintiff was aware that both the female employee who Manager Keating had grabbed and other female employees had complained to his superiors or Human Resources about his conduct toward them.

25. The female employee who complained about Manager Keating grabbing her was soon terminated or separated from employment.

26. Defendant never took prompt and effective steps to prevent Manager Keating from harassing female employees; instead, at most, it had him counseled or trained about appropriate conduct in the workplace.

27. Defendant knew that its counseling or training had but a temporary impact on Manager Keating's harassment.

28. Defendant never thoroughly investigated or appropriately interviewed female subordinates of Manager Keating to determine whether they had been harassed and/or how effective its meager efforts to reform him had been.

29. Manager Keating pursued a "seduction ritual" with Plaintiff, repeatedly asking her to go to lunch, one-on-one, with him even though she rejected each of his invitations.

30. Once, when Manager Keating's wife was away, he asked Plaintiff to join her one-on-one at his home.

31. Plaintiff reasonably feared that, if she complained to Human Resources or his superiors about Manager Keating, either nothing would be done by Defendant or she would be ostracized or terminated.

32. Plaintiff's complaints to Manager Keating had been futile, and she so wanted to preserve her job that she did not dare risk losing it by complaining to Human Resources or his superiors.

33. Plaintiff believed that Manager Keating's responsibilities made him superior in Defendant's chain-of-command to Human Resources, and notice to his superiors from other female employees had not produced a sustained change in his behavior.

34. As Manager Keating's harassment persisted, though, it altered the working conditions for Plaintiff: she was constantly alert about his whereabouts, changed direction or feigned other activities to avoid him, was jumpy when he approached, kept her mouth shut to avoid profanity, and controlled her anger so she did not slap him.

35. The highest priority for Plaintiff was providing quality care to patients, and she struggled to ensure that Manager Keating's harassment did not interfere with providing that care.

36. Manager Keating was stocky, boasted of how he worked out at a nearby fitness center, and significantly outweighed Plaintiff.

37. Coming to work each day in fear about what Manager Keating might do that day, how he would touch her or brush his body against her, whether he would insist she go out to lunch or spend time alone with him, and what else he might do cumulatively took a toll on Plaintiff.

38. Plaintiff became so uncomfortable around Manager Keating that, when she learned he was going to send his child to the daycare center where she took her child, she immediately withdrew her child from that center.

39. By February 2018, Manager Keating's harassment had become intolerable: even though he lacked a work-related reason, he insisted on having a one-on-one meeting with Plaintiff.

40. During that meeting Plaintiff became so uncomfortable that she begged him to allow her to return to her station.

41. Manager Keating reluctantly allowed Plaintiff to return to her station

42. Soon, though, Manager Keating complained about Plaintiff's job performance, falsely asserting that she was not following proper e-mail protocols.

43. Manager Keating had never complained about Plaintiff's performance before, and she felt his false criticism was the last straw: he was going to retaliate against her if she continued to rebuff his unwelcome sexual advances.

44. Plaintiff resigned with her last day of work being February 26, 2018.

45. As a direct and proximate result of the hostile environment, Plaintiff has suffered and continues to suffer from emotional distress, humiliation, frustration, and related suffering.

46. As a direct and proximate result of the constructive discharge, Plaintiff has suffered and is continuing to suffer economic harm.

47. Defendant acted with reckless disregard toward Plaintiff's right not to be a victim of sexual harassment and/or constructively discharged in violation of the Ohio Laws Against Discrimination.

## V. Claim for Relief

48. Paragraphs 1 through 47 above are realleged and incorporated herein.

49. By inflicting a hostile environment on Plaintiff and failing to provide a prompt and effective remedy for her manager's harassment and/or constructively discharging her by allowing its manager to persist in harassment which rendered the conditions of her employment intolerable, Defendant violated the Ohio Laws Against Discrimination.

## VI. Prayer for Relief

WHEREFORE, Plaintiff prays that this Court:

a. declare that Defendant has violated the Ohio Laws Against Discrimination;

    b.      order such equitable relief as will make her whole;

    c.      award more than $75,000 in economic, compensatory, and punitive damages, including back and front pay, and prejudgment and post-judgment interest;

    d.      award costs and attorneys' fees; and

    e.      grant such other relief as the Court may deem appropriate.

Respectfully submitted,

By: */s/ John S. Marshall*
John S. Marshall (0015160
Samuel M. Schlein (0092194)
*(sschlein@marshallforman.com)*
Edward R. Forman (0076651)
*(eforman@marshallforman.com)*
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007